**CLAPPER et al.**

v.

**ORIGINAL TRACTOR CAB CO., Inc. et al.**

Civ. No. 2255.

United States District Court, S. D. Indiana, Indianapolis Division.

Dec. 16, 1953.

Lockwood, Galt, Woodard, & Smith, Indianapolis, Ind., Thomas E. Scofield, Kansas City, Mo., for plaintiffs.

Linder & Kistler, Indianapolis, Ind., J. Preston Swecker, Washington, D. C., Kenneth L. Earnest, Rushville, Ind., for defendants.

Madden & Burke and Charles T. Rafter, Jr., Kansas City, Mo., Lockwood, Galt, Woodard & Smith, Indianapolis, Ind., Rudolph L. Lowell, Des Moines, Iowa, Philip V. W. Peck, Washington, D. C., John E. Sebat, Danville, Ill., for cross-defendants.

STECKLER, District Judge.

This matter came on for hearing in respect to the issue of venue and jurisdiction as raised by the cross-defendants' motions to dismiss the amended counterclaim and cross-complaint for want of venue. The question for determination is whether the cross-defendants, Comfort Equipment Company and Fort Dodge Tent and Awning Company, are found, or whether they transact business within the Southern District of Indiana so as to bring them within the venue of this court within the meaning of Section 12 of the Clayton Act, 15 U.S.C.A. § 22. Should this question be resolved in the affirmative, then the Court will have jurisdiction of the cause of action presented by the defendants' amended counterclaim and cross-complaint against said cross-defendants. Should the question be resolved in the negative, then the motion to dismiss for want of venue must be sustained.

The Court having heard the evidence and having considered the briefs of the parties filed before the hearing, and having considered the post trial briefs of counsel, and having also considered the depositions taken in this cause, and being fully advised in the premises now makes the following findings of fact and conclusions of law.

### Findings of Fact

For the sake of brevity, hereinafter Comfort Equipment Company will be referred to merely as Comfort, and Fort Dodge Tent and Awning Company will be referred to merely as Fort Dodge.

1. This is a patent infringement suit brought by the plaintiffs who are patentees of the patents in suit.

2. The defendants in their answer to plaintiffs' complaint deny infringement and validity of the patents and claim treble damages against plaintiffs and the cross-defendants for alleged violation of the Sherman and Clayton Acts, Title 15 U.S.C.A. §§ 1, 4, 15 and 26.

3. Subsequent to defendants' original answer and counterclaim, the defendants, upon motion and showing to the Court that certain additional parties defendant should be joined as cross-defendants to this action, were granted leave to file their amended counterclaim against the plaintiffs and the cross-defendants, Comfort, Fort Dodge and Cab-ette Company. Pursuant to the leave granted the Court ordered Comfort, Fort Dodge and Cab-ette Company to be made parties cross-defendant and further ordered that they be served with summonses and copies of said amended counterclaim.

4. The cross-defendant, Cab-ette Company, has conceded jurisdiction.

5. Cross-defendant Comfort is a corporation organized and existing under the laws of the State of Missouri and has its principal place of business in Kansas City in the Western District of Missouri.

Cross-defendant Fort Dodge is a corporation organized and existing under the laws of the State of Iowa and has its principal place of business in Fort Dodge in the Northern District of Iowa.

Cross-defendant Cab-ette Company is a corporation organized and existing under the laws of the State of Illinois and has its principal place of business in Danville in the Eastern District of Illinois.

6. Each of the cross-defendants was served with a summons and a copy of the amended counterclaim and cross-complaint in the district in which each is domiciled and has its principal place of business.

*Relationship of Plaintiffs and Cross-Defendants, General Description of Devices Patented and Sold, and Growth in Sales.*

7. The plaintiffs, Clapper and Flora, the patentees herein, and one Halligan, were the original applicants for patents on the devices here involved. Each at that time was connected with one of the cross-defendants to this suit. Following interference proceedings before the United States Patent Office, and subsequently certain concessions of priority, the plaintiffs and cross-defendants entered into an agreement stipulating certain royal-

ties and granting the cross-defendants a license to manufacture and sell heating units embodying the Flora and Clapper applications and any improvements thereto. This agreement between the plaintiffs and cross-defendants was executed August 3d and 4th, 1948. Approximately three months thereafter, patents were issued by the Patent Office to Clapper and Flora on their applications. Among other things, the parties agreed to and did establish a "litigation fund" and by the terms of the agreement a plan of procedure was prescribed whereby they would mutually protect and develop their patent rights. This action has been brought and the litigation expense paid out of the litigation fund in accordance with that procedure.

8. The devices covered by the patents in suit are referred to as heating units for tractors. They are intended as accessories for the comfort of the drivers of tractors, especially farm tractors, during the cold season of the year, or under such climatic conditions. Their popularity is particularly found in the central and northern states and in Canada.

9. Since the time of their introduction there has been a continuous annual growth in the sale of the devices. At first they were sold by direct sales to the consumer, but since the time of the license agreement the sales have been made principally through distributors throughout the United States except in the warmer southern states. Commensurate with the growth in sales the two cross-defendants here concerned expanded their sales operations by establishing additional distributorships.

*Similarity of Methods of Sale Employed by Cross-Defendants Comfort and Fort Dodge.*

10. The sales methods of both Comfort and Fort Dodge are quite similar. Both send their sales managers or assistant sales managers into the territories where distributorships are established. Both advertise in national and local publications. Both furnish advertising materials and aids. Both have field men or "missionaries," as they are called, who travel in the territories served by the distributors. These field men travel with the salesmen of the distributors, calling on dealers, discussing complaints, taking suggestions for improvements and putting forth every effort to promote sales of their products through the distributor and such dealers in the territory.

Both Comfort and Fort Dodge deny that they have any control over the distributors and the methods employed by the distributors in the sales of the products. Each conducts its sales to the distributors on an f. o. b. basis at the place of manufacture, that is, Kansas City and Fort Dodge, respectively. Both contend that title to the goods passes at such places. Neither Comfort nor Fort Dodge has a written contract with the distributors.

*Comfort's Distributors.*

11. In the Southern District of Indiana the cross-defendant, Comfort, has as its distributor Stover-Winsted Company at Indianapolis, Indiana. In order to cover a portion of the eastern part of the state, it has as its distributor the Maumee Valley Seed Service at Fort Wayne, Indiana. This latter company deals in farm implements and makes many of its sales to dealers in the Southern District of Indiana. Both of these distributors sell to dealers, who in turn sell to the ultimate consumers who are, as stated before, principally farmers. The distributor at Fort Wayne, Indiana has salesmen who travel in the Southern District of Indiana although Fort Wayne is located in the Northern District of Indiana.

*Fort Dodge's Distributor.*

12. Fort Dodge has as its distributor in the Southern District of Indiana, Central Rubber and Supply Company, located at Indianapolis. This distributor deals in a variety of products, both on a wholesale and retail basis. It has salesmen who travel in the Southern District of Indiana.

This distributorship was established, according to the testimony of Warren T.

Ruddell, Vice President of Central Rubber and Supply Company, in the year 1948. He became interested in the "Heat Houser," the trade name of the heating unit sold by Fort Dodge, and later one of the representatives of Fort Dodge called on him, and in the words of Mr. Ruddell, "induced us to buy this line."

*Fort Dodge Transactions.*

13. The Court finds that the cross-defendant, Fort Dodge, transacts business in the Southern District of Indiana within the meaning and requirements of Section 12 of the Clayton Act, 15 U.S. C.A. § 22.

Since the year 1948 it has engaged in a continuous course of business in interstate trade with its distributor in this District. Annually it has sold a substantial amount of its products to its distributor, Central Rubber and Supply Company. Since the beginning of its transactions with said distributor and the dealers under such distributor, it has constantly increased its sales in this District. It has performed in this District efficient and productive sales and promotional activities. Once or twice a year its sales manager has called on the distributor. His visits were usually timed and arranged in advance so as to permit him to meet with all of the sales representatives of the distributor at the sales meetings called by the distributor. At first he was invited, but later the opportunity to make such visits were at the request and solicitation of this cross-defendant. At such meetings the sales manager would discuss the advantages of his company's products, any improvements thereto, prices, changes in style, and in general, do what he could to "stimulate interest in Heat Housers." At one such meeting he arranged to show the salesmen a colored film depicting the story of Heat Houser, its manufacture and installation. At one of these meetings he was accompanied by a salesman or "field man" from Fort Dodge.

In addition to the sales manager's visits each year, this cross-defendant sent its field man into the District to travel with the salesmen of Central Rubber and Supply Company. This field man was a salesman and he spent two weeks in 1949 and two weeks in 1950 traveling with salesmen of Central Rubber. On these trips they were engaged in selling Heat Housers and calling on prospective dealers who hadn't previously carried the product. After one of such trips, in August of 1951, an official of Central Rubber and Supply wrote to Fort Dodge complimenting Fort Dodge for the fine orders obtained by the field man and stating that orders were still coming in long after the trip. This same official of the distributor testified that the field man was usually taken to prospective dealers who hadn't previously ordered and that "his score in getting them on the dotted line was quite good."

The aforesaid field man also traveled in Indiana and in this District in the year 1951 as indicated above.

As to the volume of business transacted with and through Central Rubber and Supply Company, the testimony of Mr. Ruddell, the Vice President of that company, is revealing. For example, he testified that the amount of business in this cross-defendant's products in the year 1949 was "approximately $100,000.-00"; for the year 1950, "close to $100,-000.00," and for the year 1951, "nearly $150,000.00."

This cross-defendant has continuously supplied its distributor in this District with advertising materials, and has placed local advertisements in publications published and distributed in the District.

There is also evidence, though slight, of some direct transactions with purchasers in this District.

*Comfort's Transactions.*

14. The Court finds that the cross-defendant Comfort transacts business in the Southern District of Indiana within the meaning and requirements of Section 12 of the Clayton Act, 15 U.S.C.A. § 22.

Since September of 1948 this cross-defendant has engaged in a continuous

course of business with its distributor, Stover-Winsted Company, in this District. Stover-Winsted has its headquarters in Indianapolis The evidence in this matter shows that said cross-defendant engaged in direct sales to dealers in this District in the month of August 1948 and at a time subsequent to the license agreement referred to in Finding Number 7. During that month this cross-defendant's assistant sales manager, John P. Dolan, made a sales trip through this District, selling covers and seeking a distributor to handle his company's products. It was he who first contacted Stover-Winsted Company and induced the latter to become the distributor for Comfort in this District.

About the middle of the year 1949 this cross-defendant established a distributorship with Maumee Valley Seed Service at Fort Wayne, Indiana.

Cross-defendant Comfort has regularly sent its assistant sales manager into this District to call on its distributor, Stover-Winsted Company. It has also had him service its distributor at Fort Wayne. These visits amount to two or three each year. The record discloses that the assistant sales manager attended an Implement Dealers' Convention at Indianapolis, Indiana in December of 1950. Maumee Valley Seed Service had dealers throughout the Southern District of Indiana, one of whom was located at Indianapolis. At such convention in December, 1950, cross-defendant's assistant sales manager met with the salesmen of Maumee Valley Seed Service and with the dealers who purchased from such distributors. At this convention literature was distributed advertising Comfort's products. In addition, wall charts displaying Comfort's products and bearing the name of the distributor were displayed. This meeting was for the purpose of promoting sales and stimulating interest in products, including the Comfort cover. These charts were furnished by cross-defendant Comfort. Maumee Valley Seed Service through its representatives met at such convention with its salesmen, and with Dolan, cross-de-

fendant's assistant sales manager, in the company of dealers handling Comfort's products. Their purpose was to further the sale of Comfort covers and other products sold to the dealers.

Just two weeks before the cross-complaint herein was filed, said John P. Dolan in the company of salesmen of Maumee Valley Seed Service, made a trip in the Southern District of Indiana visiting dealers. This trip was primarily to service complaints as to weed sprayers which Comfort was then selling to Maumee Valley Seed Service who in turn was selling to the dealers. The trip was made in March of 1951. By this time said Dolan was also pushing sales of another product introduced by Comfort, an item known as Roll-O-Matic Chains. Descriptive of Dolan's activities in connection with the promotion of the sales of his company's products, including sales in the Southern District of Indiana, is an excerpt from a letter addressed to Comfort under date of April 11, 1951, written by the sales manager of Maumee Valley Seed Service, as follows:

"John Dolan is the best factory man that ever went out with any of the Maumee Valley salesmen. He never lets up. John is still more than welcome to come down and go out with our men all the time if you could spare him. I am afraid if that did happen all they would be selling would be Comfort covers and Comfort weed sprayers. John, in selling the Comfort Equipment line, is equal to what Jack Dempsey did in the ring."

Dolan's trips into this District were for the purpose of servicing the distributors and their dealers. They were made also for the purpose of inducing the distributors to buy and sell Comfort's products. On these visits, as disclosed by one of the representatives of Maumee Valley Seed Service, he discussed with the distributors all the problems of the distributor and the problems of the manufacturer. He discussed complaints and suggestions for the improvement of his company's products. Likewise, on these

visits he discussed prices and invoices, and generally, any other matters concerning the relationship and business affairs existing between his company and the distributor.

The amount of business done with each of the distributors in connection with sales in this District was substantial and continuous. For example, the following number of heating units were sold or supplied to Stover-Winsted Company: 1948, 1,307 units; 1949, 1,410 units; 1950, 1,425 units, and in the year 1951, 2,361 units. These units bore a factory price ranging from $22.00 to $23.75 in the year 1951. The foregoing volume-of-business figures do not include the additional parts and accessories sold in conjunction with the Comfort covers by cross-defendant to Stover-Winsted Company. At the time of his deposition, May 5, 1952, an official of Maumee Valley Seed Service estimated the total value of the business that his company had done with Comfort products to be "possibly $400,000," much of which was resold to dealers in the Southern District.

In addition to all of the foregoing, Comfort engaged in a continuous correspondence with the distributors, distributing sales bulletins and communicating directly with salesmen of the distributors, furnishing sales aids, and in general, conducted an intensive sales campaign with the distributors and their salesmen.

Comfort engaged in direct local advertising within the District as well as through national publications circulated here. It advertised by way of radio station WLW in Cincinnati whose broadcasts extended into the Southern District of Indiana. It also advertised direct solicitation and supplied to its distributors advertising materials, newspaper mats and other services in promoting the sale of its products in this District.

## Conclusions of Law

From the foregoing facts the Court concludes:

1. In respect to the issue of venue and jurisdiction as raised by cross-defendants' motions to dismiss the amended counterclaim and cross-complaint for improper venue, or for the want of venue, the Court concludes that the burden of proof is upon the defendants.

2. That the defendants have sustained their burden of proof.

3. That the law in respect to the issue of venue and jurisdiction in connection with the cause of action alleged in defendants' amended counterclaim and cross-complaint is with the defendants and against the cross-defendants, Comfort Equipment Company and Fort Dodge Tent and Awning Company.

4. That cross-defendants, Comfort Equipment Company and Fort Dodge Tent and Awning Company, transact business in the Southern District of Indiana within the meaning and requirements of Section 12 of the Clayton Act, Title 15 United States Code Annotated, § 22. That they were so engaged in transacting business in said District at the time and prior to the filing of the amended counterclaim and cross-complaint herein.

5. That said cross-defendants were each properly served with summons and copy of said amended counterclaim in the districts wherein they were found, to-wit: The Western District of Missouri and the Northern District of Iowa, the district in which each is respectively domiciled.

6. That for the purpose of trying the cause of action alleged in the amended counterclaim and cross-complaint, venue has been established and the Court has jurisdiction over said cause of action.

7. Cross-defendants' Motions to Dismiss the Amended Counterclaim and Cross-complaint should be, and the same is hereby overruled.

The Clerk of the Court will enter an order in accordance herewith and serve copies of this entry upon each of the parties hereto.